# IN THE COURT OF APPEALS OF IOWA

No. 19-1993
Filed May 26, 2021

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**ZACHARY JAY OUVERSON,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Gregory D. Brandt, District Associate Judge

Zachary Ouverson appeals the denial of his motion to suppress. **AFFIRMED.**

Christine E. Branstad and Nathan A. Olson of Branstad & Olson Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., Tabor, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**SCOTT, Senior Judge.**

Zachary Ouverson appeals his conviction of possession of a controlled substance, challenging the denial of his motion to suppress evidence obtained as a result of an allegedly unconstitutional traffic stop.

## I.    Background

At approximately 10:25 p.m. on June 24, 2019, Officer Andrew Hofbauer of the West Des Moines Police Department was on routine patrol when he observed an SUV make what he believed to be an improper right-hand turn onto Valley West Drive. Hofbauer's testimony and his cruiser's dash-cam footage[1] disclose Valley West Drive is a four-lane road, with two lanes running north and two lanes running south. The evidence shows the vehicle turned from the adjacent road and pulled out into the left, northbound lane instead of the right northbound lane. Hofbauer testified this was an improper turn because it was not "curb to curb." *See* Iowa Code § 321.311(1)(a) (2019). Hofbauer followed the vehicle down Valley West Drive for roughly twenty seconds, at which point it turned onto a side street. Hofbauer activated his overhead lights on the side street, and the vehicle pulled into a driveway.

Hofbauer exited his cruiser, approached the driver side of the vehicle, and made contact with the vehicle's occupants, Ouverson (driver) and Stephen Tazzioli (passenger). Upon his approach, Hoffbauer observed Ouverson light a cigarette.

---

[1] As the State points out, the video exhibit admitted at the suppression hearing only contains footage leading up to the traffic stop but not the subsequent encounter. However, at the hearing, the parties agreed footage of the entire encounter would be submitted to the district court following hearing. Said footage has made its way to us on appeal, so we assume it was provided to the court and is part of our appellate record.

Hofbauer testified, based on his training, he thought the occupants might be trying to mask some other odor in the vehicle. Hofbauer observed Ouverson to exhibit bloodshot, watery eyes. He also detected a faint smell of marijuana, "mixed with the odor of a strong cigarette smell". Hofbauer testified that, at this point, he determined he would be conducting a marijuana investigation. So he "asked about marijuana, drinking, things of that nature." Hofbauer retrieved the occupants' information and paperwork and returned to his cruiser to run record checks, pursuant to which he learned Tazzioli was on probation for marijuana possession and carrying weapons. Based on this information and his observations, Hofbauer radioed for another unit. Less than three minutes after returning to his cruiser, Hofbauer can be heard speaking over his radio on the dash-cam footage: "I can smell marijuana in the car. He lit up a cigarette right away."[2] He also subsequently noted the bloodshot and watery nature of Ouverson's eyes. Hofbauer began preparing a warning for the improper turn. His backup arrived before he completed and tendered the warning.

Both officers then approached the vehicle and had both occupants step out. Hofbauer testified he wanted them out of the vehicle to investigate the smell of marijuana coming from the vehicle or their persons. Tazzioli denied the presence of marijuana or paraphernalia in the vehicle. Hofbauer then approached Ouverson to provide him his warning, at which point he observed marijuana shake on Ouverson's pants. Hofbauer questioned how much marijuana was in the vehicle, and Ouverson responded "a small amount." Hofbauer initiated a search of the

---

[2] It appears Hofbauer was either not wearing a body microphone or, if he was, it was inoperable. Some of his speaking can be heard while he is in his cruiser.

vehicle and found a marijuana grinder, marijuana in the center console, and more marijuana contained in a bag also containing Tazzioli's wallet. Both occupants were read their *Miranda* rights, after which both admitted to possessing and consuming marijuana.

Ouverson was charged by trial information with possession of a controlled substance. Shortly thereafter, he filed a joinder with the motion to suppress filed by Tazzioli in a separate criminal case.[3] The State filed a resistance, and the matter proceeded to hearing. Following the presentation of the evidence at the suppression hearing, Ouverson's counsel essentially argued the turn Hofbauer deemed improper was not a violation of Iowa Code section 321.311, so there was no reasonable basis for the traffic stop. Alternatively, counsel argued Hofbauer impermissibly prolonged the stop beyond issuing a warning without the requisite reasonable suspicion.

In its suppression ruling, the court concluded the vehicle's turn onto Valley West Drive was a violation of section 321.311 and the stop was therefore justified. The court found Hofbauer's detection of a faint smell of marijuana, Ouverson's lighting of a cigarette, and Hofbauer's knowledge that cigarettes are used to mask other odors provided a reasonable basis for prolonging the encounter. Further, the court found Hofbauer's observance of marijuana shake on Ouverson's pants provided probable cause to search the vehicle. The court denied the motion to suppress.

---

[3] Tazzioli's motion to suppress is not part of our record on appeal.

Following a bench trial on the minutes of evidence, Ouverson was found guilty as charged. He appealed following the imposition of sentence.

## II.     Standard of Review

"We review the application and interpretation of statutes for errors at law." *Jones v. Glenwood Golf Corp.*, 956 N.W.2d 138, 142 (Iowa 2021). "When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Fogg*, 936 N.W.2d 664, 667 (Iowa 2019) (quoting *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018)). "[W]e independently evaluate the totality of the circumstances as shown by the entire record." *State v. Smith*, 919 N.W.2d 1, 4 (Iowa 2018) (alteration in original) (quoting *State v. White*, 887 N.W.2d 172, 175 (Iowa 2016)). "Each case must be evaluated in light of its unique circumstances." *Fogg*, 936 N.W.2d at 667 (quoting *Coffman*, 914 N.W.2d at 244). We give deference to the district court's findings of fact, but we are not bound by them. *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017).

## III.    Analysis

### A.     Initial Seizure

"The Fourth Amendment [to] the United States Constitution," as applied to the states by the Fourteenth Amendment, "and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures." *State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001); *accord State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). Evidence obtained following a violation of these constitutional protections is generally inadmissible at trial. *See Wong Sun v.*

*United States*, 371 U.S. 471, 484–85 (1963); *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961); *Naujoks*, 637 N.W.2d at 111.

It is true that stopping an automobile and detaining its occupants unquestionably amounts to a seizure within the meaning of the state and federal constitutions. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Coleman*, 890 N.W.2d 284, 288 (Iowa 2017); *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013). But all that is constitutionally required for a traffic stop to be permissible is that it be reasonable. *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8. "Generally, a traffic stop is reasonable when the police have probable cause or reasonable suspicion to believe that the motorist violated a traffic law." *State v. Brown*, 930 N.W.2d 840, 845 (Iowa 2019). The burden is on the State to establish probable cause by a preponderance of the evidence. *Id.* at 855. If a traffic infraction occurs, however minor, and the officer witnessed it, the State has met its burden. *Id.*; *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004). "The existence of probable cause for a traffic stop is evaluated 'from the standpoint of an objectively reasonable officer.'" *Brown*, 930 N.W.2d at 855 (quoting *Tyler*, 830 N.W.2d at 293–94). And, importantly, "[p]robable cause may exist even if the officer's perception of the traffic violation was inaccurate." *Tyler*, 830 N.W.2d at 293. "Probable cause exists where the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *State v. Pals*, 805 N.W.2d 767, 775 (Iowa 2011) (alterations in original) (internal quotation marks omitted) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). In determining whether the

officer observed a violation of our traffic laws, we will "give considerable deference to the trial court's findings regarding the credibility of the witnesses," but we will not be "bound by them." *Tague*, 676 N.W.2d at 201.

Ouverson argues "the district court erred in construing section 321.311 to outlaw the turn used by Ouverson" and, by extension, concluding Hofbauer had a sufficient basis for the traffic stop. Iowa Code section 321.311(1)(a) provides: "The driver of a vehicle intending to turn at an intersection shall do so as follows:" "[b]oth the approach for a right turn and right turn shall be made as close as practical to the right-hand curb or edge of the roadway." As Ouverson points out, the relevant language is "as close as practical." Ouverson claims his "right-hand turn would have had to be close to the right-hand curb while also 'suitable' to allow [him] to safely turn left directly after navigating the right-hand turn." His arguments boil down to one central concept—that his upcoming left-hand turn rendered turning along the curb impractical. We disagree. Hofbauer testified Ouverson had sufficient distance to turn next to the curb, legally signal and effectuate a lane change, and turn left on the upcoming side street. The dash-cam footage confirms the same. So the upcoming left turn did not render turning next to the curb impractical. The violation of section 321.311(a)(1) provided probable cause to initiate a traffic stop.

B.      Extension of Seizure

Ouverson argues "the officer completed the purpose of the traffic stop and issues a warning to [him] prior to instructing the vehicle occupants out of the car for additional seizure and search." He contends this violated both the federal and state constitutions. True, "[a]uthority for the seizure . . . ends when tasks tied to

the traffic infraction are—or reasonably should have been—completed." *State v. Salcedo*, 935 N.W.2d 572, 579 (Iowa 2019) (citation omitted) (discussing *Rodriguez v. United States*, 575 U.S. 348 (2015) and *In re Prop. Seized from Pardee*, 872 N.W.2d 384 (Iowa 2015)). But here, Hofbauer obtained individualized reasonable suspicion of other criminal activity before prolonging the stop. *See id.* at 577–79. Specifically, he observed Ouverson light a cigarette, which his training and experience told him was an indicator of an effort to mask another smell in the vehicle, he smelled a faint odor of marijuana underneath the cigarette smell, and he observed Ouverson to exhibit bloodshot and watery eyes. Hofbauer immediately decided he would be conducting a marijuana investigation. The specific and articulable facts, taken together with rational inferences from those facts, amounted to reasonable suspicion that further investigation was warranted. *See id.* at 578. An investigation "may be expanded to satisfy suspicions of criminal activity unrelated to the traffic infraction." *Id.* We conclude the extension of the stop was reasonable.

## IV. Conclusion

Finding no cause for reversal on the issues presented for our review, we affirm the district court's denial of Ouverson's motion to suppress and his conviction.

**AFFIRMED.**